IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

DONALD R. HOWARD, #1397355          §

VS.                                 §          CIVIL ACTION NO. 6:12cv250

DAVID LANGSTON, ET AL               §

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Donald R. Howard, proceeding *pro se* and *in forma pauperis*, a prisoner confined

in the Texas prison system, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was

transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I.      **FACTS**

Plaintiff filed his original complaint on April 4, 2012. In it, he alleges that while he was

incarcerated in the Michael Unit of the Texas Department of Criminal Justice ("TDCJ"), he was the

focus of a wide-sweeping conspiracy embracing a broad variety of medical personnel and

correctional officers. Altogether, he named 25 Defendants in this lawsuit including dentist Dr. David

Langston, medical authority Dr. Gary Wright, Nurse Tara Patton, Nurse Lori Fortner, Nurse Pam

Pace-Moore, Major Jimmy Bowman, Chief of Grievance Department Pamela Kirkpatrick, Grievance

Coordinator Sharon K. Different, Grievance Coordinator Tammy Rainey, Ass't Warden William

Motal, Nurse Shelly Brown, Correctional Officer John Black, Captain William Jock, Warden John

Rupert, Ass't Warden Dwayne Dewberry, Nurse Frankco, Correctional Officer Dawanda Lacy,

Correctional Officer Andrea Hemphill, Correctional Officer Kristi Taylor, TDCJ Health Services

Director Robert Kane, Lieutenant James Kelley, Sergeant Sherman Cooper, Elizabeth Mullen of the Office of the Inspector General, and OIG Chief Investigator Evelyn Green.

On July 12, 2012, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Lorie Parker, Warden William Motal and Nurse Kelly Maxwell testified under oath about prison policies and information contained in the Plaintiff's prison records. By and large, Plaintiff's testimony restated and explained certain portions of his complaint, which the Court summarizes below.

Plaintiff alleges that all of these Defendants conspired together to infect him with the AIDS virus through Dr. Langston and then, in one capacity or another, assisted in infecting him, assisted in covering up the conspiracy by "derailing" his grievances or failing to investigate his claims, refused to allow him to press criminal charges in connection with his allegations or otherwise participated in this putative conspiracy. Furthermore, he alleges that all of these actions were directed by and performed in servitude to the Ku Klux Klan, which Plaintiff alleges wants to kill him by infecting him with AIDS and Hepatitis-C.

Before arriving at his allegations of the current putative co-conspirators, Plaintiff alleges that he encountered similar treatment while at the Bill Clements Unit in Amarillo, where he got into fights with three Ku Klux Klan ("KKK") officers. Without recounting the elaborate details of his

allegations at that point, he claims that the conspiracy to kill him began then. He has not identified when this occurred, but alleges that after he complained about the fighting with the KKK officers, he was informed by medical personnel at the Clements Unit that he had contracted Hepatitis A, B and C without explanation. He was then transferred to the Allred Unit, again at an unstated point in time, which he identifies as "another Klan unit." He alleges he was threatened there because of his prior complaints against the KKK officers at the Clements Unit. He later discovered that the nurses at the Allred Unit were using infected syringes while drawing his blood for Hepatitis testing. Further, the nurses were allegedly "having something put into my food." After reporting this to the Department of Justice, Plaintiff was transferred to the McConnell Unit in Beeville, from which he was apparently released after a period of time. He contends that while he was "free world," all of his medical problems disappeared and he tested free of Hepatitis and AIDS. However, on his return to TDCJ, Plaintiff alleges the KKK prison officials, officers and medical personnel "were ready for [him]." He alleges they spread propaganda about him in the Michael Unit and made him a snitch so that if he ever entered general population, he would be killed.

During a fight with prison officials, one of Plaintiff's teeth was chipped. It was when he went to Dr. Langston to have it pulled that Dr. Langston deliberately infected him with AIDS at the behest of the KKK "by putting contaminated human flesh into the cavity of my gum from where the tooth was pulled."[1] He started developing symptoms including swelling and blistering. However,

---

[1]     During the *Spears* hearing, he also testified that he was deliberately infected with the AIDS virus in 2007. That fact is also reflected in Plaintiff's Grievance Record, discussed below. He contends that the material Dr. Langston put in the tooth socket caused it not to heal, it took two months to get antibiotics and his mouth began to blister in the meantime. In connection with this testimony, he also testified that he had been out of prison from December 17, 2001, until he returned on November 11, 2006 and on January 12, 2007, went to the Michael Unit, which is when Dr. Langston infected him with AIDS. Subsequent events took place as recently as November 2011.

the KKK aborted Plaintiff's attempts at complaining to the Texas State Board of Dental Examiners. This attempt to kill him was allegedly instigated by Major Bowman, who Plaintiff alleged had followed him to the Allred Unit and then to the Michael Unit. Plaintiff contends that he filed a grievance 15 days after the tooth extraction, but it never came back. In connection with Dr. Langston's actions, the other Defendant medical personnel either knew and did nothing to stop Dr. Langston's actions or refused to perform the testing that Plaintiff wanted done, all under the coordination of the KKK. It was when the nurses refused to perform AIDS testing on him that Plaintiff "knew" he was infected with AIDS.

Plaintiff further contends that Defendants Kirkpatrick, Rainey and Different all "derailed" Plaintiff's grievances against Dr. Langston and Major Bowman, among other grievances they blocked. Defendant Warden Motal worked in coordination with these grievance personnel to block Plaintiff's grievances. Defendant Dr. Wright refused to see Plaintiff at sick call because Plaintiff lied about Defendant Nurse Brown having infected Plaintiff with contaminated blood from another patient in June 2011 and giving Plaintiff Hepatitis-C (another part of the conspiracy), which is why Plaintiff is suing Dr. Wright. Inspector General Defendants Mullen and Green would not allow Plaintiff to file criminal charges against Defendants Bowman and Langston as part of the conspiracy. The various correctional officer Defendants all had a supporting role of one type or another in the putative conspiracy.

In sum, Plaintiff alleged in his complaint and testified at the *Spears* hearing that each of the 25 Defendants were part and parcel to the conspiracy to infect him with AIDS in 2007 and Hepatitis-C in 2011 in order to kill him, all at the behest of the Ku Klux Klan.

After Plaintiff's testimony, Nurse Maxwell testified that Plaintiff's medical records showed

4

that he had tested non-reactive for syphilis in June 2011; and negative for AIDS but positive for Hepatitis-C on July 22, 2008. It also showed that Dr. Langston treated Plaintiff for ulcers in his mouth. Plaintiff had been offered an AIDS test by Defendant Nurse Fortner, but Plaintiff refused. Nurse Maxwell also testified that Plaintiff had been referred to psychiatric treatment but was not a patient and refused the treatment.

Warden Motal testified as to the overall grievance process, including the investigatory process, noting that if an official had trashed a grievance without investigating it as Plaintiff suggested, it would be grounds for firing or demotion.

Regional Grievance Coordinator Parker testified that Plaintiff appeared to have exhausted his administrative remedies against only Defendants Brown and Fortner. She submitted Plaintiff's Grievance, Medical and Classification records to the Court. Plaintiff agreed that the Court may review these records in connection with this case. The Court's review confirm the testimony of Nurse Maxwell and Regional Grievance Coordinator Parker.

## II.     DISCUSSION AND ANALYSIS

Pursuant to 28 U.S.C. § 1915A, the Court must review Plaintiff's complaint and dismiss it, or any portion of it, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a Defendant who is immune from such relief. A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The term "frivolous" embraces not only the inarguable legal conclusion, but also the fanciful factual allegation. *Neitzke*, 490 U.S. at 325. A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges

violation of a legal interest which clearly does not exist. *Harris v. Gehmann*, 198 F.3d 153, 156 (5th

Cir. 1999) (per curiam).  A complaint lacks an arguable basis in fact if, after providing the plaintiff

the opportunity to present additional facts when necessary, the facts alleged are clearly baseless.

*Talib*, 138 F.3d at 213.

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured

by the Constitution or the laws of the United States and a violation of that right by one or more state

actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994).  To be a state actor

subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance,

regulation, custom, or usage, of any State of Territory or the District of Columbia."  42 U.S.C. §

1983.  "The traditional definition of acting under color of state law requires that the defendant in a

§ 1983 action have exercised power 'possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49,

108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61

S. Ct. 1031, 85 L. Ed. 1368 (1941)).  The Supreme Court has formulated a two-part approach to the

issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the
> State or by a rule of conduct imposed by the State or by a person for whom the State is
> responsible . . . .  Second, the party charged with the deprivation must be a person who may
> fairly be said to be a state actor.  This may be because he is a state official, because he has
> acted together with or has obtained significant aid from state officials, or because his conduct
> is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).  In

addition, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened

with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial

decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

First, the seminal allegations in this case are that Dr. Langston infected Plaintiff with the AIDS virus in November 2007. Everything else in the widespread conspiracy Plaintiff alleges emerges from that original, supposed fact. Plaintiff filed his lawsuit on April 4, 2011. *See* docket entry #1. There is no federal statute of limitations for 42 U.S.C. § 1983 actions; the relevant statute of the forum state furnishes the limitations period, but federal law determines the date the accrual commences. *Wallace v. Kato*, 549 U.S. 384, 387-88, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989). The statute of limitations in Texas for § 1983 actions is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Accrual begins "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Burrell*, 883 F.2d at 418. Therefore, the events that Plaintiff alleges occurring before April 2009 are barred by the statute of limitations. That includes the alleged actions of Dr. Langston, medical assistants Nurses Fortner and Kyatt and the correctional officers who allegedly "blocked" Plaintiff's attempts to complain about Dr. Langston.

Several of these actors, however, are identified as continuing to threaten or make attempts on Plaintiff's life as recently as late 2011. Specifically, Plaintiff alleges that Nurse Brown infected him with tainted blood causing him to contract Hepatitis-C in June 2011. Additionally, certain of the correctional officers, including Major Bowman, Lieutenant Kelley and Sergeant Cooper, threatened him. All of these actions, including all of the 25 Defendants in this lawsuit, are alleged to have engaged in a conspiracy under the direction of the Ku Klux Klan to kill Plaintiff.

Plaintiff's primary allegations that he was infected with AIDS in 2007 and with Hepatitis-C in 2011 are demonstrably false. Notably, in 2008, Plaintiff was found to be negative for HIV and positive for Hepatitis-C; further, he testified that he had contracted Hepatitis-C before he was released to the "free world" from his earlier imprisonment several years earlier. Therefore, he could not have been infected with HIV by Dr. Langston in 2007 and he had already contracted Hepatitis-C before he was allegedly "infected" by Nurse Brown in an effort to "wors[]en the symptoms [he] already had from the infection by Dentist David Langston," Complaint at PageID #14, in 2011. Therefore, these central allegations of attempts on his life in a grand conspiracy coordinated by the KKK are not only conclusory but proven untrue by Plaintiff's own Medical and Grievance Records and the testimony adduced during the *Spears* hearing.

As to the allegation of a conspiracy, to be sufficient, the conspiracy must be properly alleged in his complaint. "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 28 U.S.C. § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (internal citations and quotations omitted), *vacated on other grounds and remanded*, 117 F.3d 1504 (5th Cir. 1997) (*en banc*), *cert. denied*, 522 U.S. 1058, 118 S. Ct. 716, 139 L. Ed. 2d 656 (1998); *see also Scott v. Curry*, 46 Fed. Appx. 732, 732 (5th Cir. 2002) (unpublished opinion), *Decker v. McDonald*, 2010 WL 1424322, at *23 (E.D. Tex. Jan. 11, 2010). Here, the Plaintiff has not alleged any facts of any other person's involvement, state actor or otherwise, that resulted in the violation of his rights under § 1983. That is, he has made no factual allegations whatsoever of any actual acts in furtherance of an

alleged conspiracy by the individual actors, either individually or in concert together. Thus, Plaintiff

has not alleged facts, either in his complaint or in his testimony during the *Spears* hearing,

supporting an inference that there was a conspiracy involving the 25 Defendants that resulted in the

violation of his rights under § 1983. His allegations that they all were taking direction from the "Ku

Klux Klan" are simply conclusory and wholly inadequate. *Marts*, 68 F.3d at 136. Therefore, the

conspiracy claim fails to state a claim upon which relief may be granted and is frivolous in that it

lacks any basis in law or in fact.

For the reasons stated herein, Plaintiff's complaint does not state a claim upon which relief

may be granted. The complaint will therefore be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[2]

It is accordingly

**ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE** for failure to

state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

It is further

---

[2]       The Court would consider also the possibility of dismissal on the issue of exhaustion
of administrative remedies. However, despite the testimony of Regional Grievance Coordinator
Parker and the evidence in Plaintiff's Grievance Record, the Court is mindful that "failure to exhaust
is an affirmative defense under the PLRA, and [ ] inmates are not required to specifically plead or
demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166
L. Ed. 2d 798 (2007). Even though the Fifth Circuit subsequently ruled that a complaint is still
subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appears on the
face of the complaint, *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007), it is not clear in this case
that such a failure actually appears on the "face of the complaint." Therefore, although the Court
believes that a case for failure to exhaust would be made if Defendants were to raise it as an
affirmative defense, the Court will not *sua sponte* make such a ruling, particularly where other
grounds exist to dismiss.

**ORDERED** that all motions not previously ruled on are hereby **DENIED**. It is further

**ORDERED** that the Clerk deliver a copy of this Memorandum Opinion and Order of Dismissal to the Three Strikes Coordinator for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **22** day of **August, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE